# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

OHIO CITIZEN ACTION,

       Plaintiff,              :       Case No. 3:05-cv-263

                            District Judge Walter Herbert Rice
     -vs-                       Chief Magistrate Judge Michael R. Merz

                         :

CITY OF ENGLEWOOD,

       Defendant.

## DECISION AND ORDER

This case is before the Court on Motion of Defendant City of Englewood to Compel Discovery (Doc. No. 53), which Plaintiff opposes (Doc. No. 56) and as to which Englewood has filed a reply memorandum, in support (Doc. No. 58). The Motion has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) (Doc. Nos. 54, 55).[1]

Defendant seeks to compel production of the following described documents

1.    Petitions circulated in the City of Englewood in 2005 with signatures of residents;

2.    Names of members of Citizen Action who reside in the City of Englewood;

3.    Names of individuals who reside in the City of Englewood who have been identified by Citizen Action as an "X file";

4.    Documents referenced by Citizen Action representatives Alexandra Buchanan and Sarah Grutza in their depositions relating to other canvasses made by Citizen Action in Montgomery County from 2000 to the present;

---

[1] The original reference of this matter to Magistrate Judge Ovington was in error. This case was randomly assigned to District Judge Rice and Magistrate Judge Merz upon filing.

5.      Saturday crew sheets;

6.      Maps of Englewood showing homes canvassed;

7.      Petition or signature sheets for past canvasses in Englewood;

8.      Lists of residents of Englewood contacted by Citizen Action from 2000 to the present.

(Motion to Compel, Doc. No. 53, at 4.)

**Standard**

Fed. R. Civ. P. 26(b)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location or any books, documents, or other tangible things and the identity and location of person having knowledge of any discoverable matter.  For good cause shown, the court may order discovery of any matter relevant to the subject matter involved in the action.

Information sought need not itself be admissible, so long as it was "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  However the scope of discovery was always within the broad discretion of the trial court. *Ghandi v. Police Dept. of City of Detroit,* 747 F.2d 338, 354 (6th Cir. 1984); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981).

**Analysis**

In objecting to the requested discovery, Citizen Action claims it is not relevant to any claim or defense, that production would be overly burdensome, and that both Citizen action and its members have a constitutional privilege under the First Amendment not to disclose the names of supporters, contributors, or members.  Each of these arguments is dealt with in turn.

2

**Relevance:**

In arguing that the sought documents are irrelevant, Citizen Action relies largely on its prior argument that the Englewood Ordinances it challenges in this case are unconstitutional on their face. However, in overruling Plaintiff's Motions for Judgment on the Pleadings and Partial Summary Judgment, Judge Rice noted that there were "many factual issues in this case that still need to be developed." (Decision and Entry, Doc. No. 29, at 13.) In particular he noted that Defendant was entitled to explore the truth of Plaintiff's allegations that its canvassers/solicitors were "warmly received" in Englewood or whether, conversely, the Ordinances were reasonably tailored to protect residents from fraudulent solicitations or annoying and unwanted invasions of their privacy. Any relevancy objection by Plaintiff based on its claim that the Ordinances are facially invalid is overruled on the basis of Judge Rice's referenced Decision.

Plaintiff's relevance objection to documents dated before 2004 and for canvasses outside of Englewood is sustained. Production of documents will be limited to those dated or created on or after January 1, 2004, and which included the City of Englewood. In doing so, the Court concludes that while such documents may have some relevance to the claims or defenses of the parties, they are remote from the particular issues in suit and therefore the costs of production outweigh its likely benefit. Fed. R. Civ. P. 26(b)(2)(c)(iii).

**Burden:**

Plaintiff's burden argument is unavailing. Mere incantation of the talismanic word "burdensome" is insufficient and Plaintiff has put very little meat on that particular bone. All Plaintiff has shown is that it has a relatively small staff and one staff member is on maternity leave.

In particular Plaintiff's burden argument seems to be based implicitly on the notion that, because the Ordinances are facially unconstitutional, no burden at all should be imposed. This again is contrary to Judge Rice's conclusion that discovery is necessary to resolve the constitutionality of Ordinances.

Perhaps implicitly recognizing that the names in question are of people who may be particularly useful as witnesses, having had first-hand contact with Citizen Action's canvassers/solicitors, Plaintiff nonetheless suggests Englewood could get the names of witnesses in another way: "The City can readily contact its 5000 households on by issue [sic], by mail, internet, its website, reverse 911, and the way it signed up 703 residents, etc." Each of these ways of trolling for witnesses is likely to be much less efficient than using the lists already compiled by Plaintiff. By contacting the people who have responded already to Plaintiff's solicitation, the City can target witness gathering in a much more pointed way than the other methods suggested by Plaintiff. Especially given that there is less than a month left of the discovery period, efficient methods of collecting evidence commend themselves. See Fed. R. Civ. P. 26(b)(2)(ii).

**Constitutionality:**

Plaintiff asserts that producing documents which reveal the names of its members or those who have signed its petitions/statements of support will violate the First Amendment rights of those persons to associate anonymously for political purposes (Memorandum in Opposition, Doc. No. 56, at 6). There is, however, no proof in this case that anyone who signed Plain tiff's Statement of Support or contributed to Plaintiff wanted to do so anonymously. While Ms. Buchanan claims in her Declaration (Exhibit 3 to Doc. No. 56) that "Citizen Action has always been committed to membership anonymity," she does not state that this policy has even been conveyed to or requested

4

by any of its members or contributors. Certainly the Statement of Support form which is attached to her Declaration does not promise anonymity and reads on its face as if it were a statement of **public** support – why give your name, address, and telephone number under the statement that you support Ohio Citizen Action's Good Neighbor Campaign if you expect your support to be kept secret? Indeed, Ms. Buchanan's Declaration supports the inference that the Statement of Support is misleading to the signer because she states that the information is transferred to Citizen Action's internal records at the end of each day of canvassing/soliciting and "Members names are not given or sold to other organizations." *Id*. at ¶ 4.

Ms. Buchanan goes on to opine that "To disclose the identity of members, in my opinion, would restrict Citizen Action's ability to communicate on public issues and to raise funds by alarming and inhibiting contributors, which would also undermine Citizen Action's ability to recruit and retain canvassers." *Id*. at ¶ 6. To support this conclusion, she lists instances of demonstrated public hostility to the organization. She lists two instances where municipalities in other parts of the State took content-based actions against speech by Citizen Action members, but there is as yet no evidence that the Ordinances were an attempt to regulate the content of Plaintiff's speech.

Ms. Buchanan also adverts to the decision of Judge Manos of the Northern District declaring unconstitutional Ohio Revised Code § 3517.091 which would have required public registration of contributors. *Id*. at ¶ 7. However, Defendant is not proposing to publish the names of Plaintiff's contributors or signers and has offered to enter into an agreed protective order to keep their names and other identifying information private. The names of persons who contributed or signed are obviously relevant to the underlying questions in this case of whether Plaintiff was "warmly received" or, instead, residents of Englewood made minor contributions as a means of limiting the annoyance attendant on being solicited at home during the dinner hour.

Plaintiff argues that even making these names available to Defendant, as opposed to the

public, is "for political purposes to obtain leverage in this lawsuit." (Memorandum in Opposition, Doc. No. 56, at 6). A much more obvious purpose and one protected by the Rules of Civil Procedure is to obtain the names of potential witnesses. There is absolutely no proof that residents of Englewood who support Plaintiff's position or positions on the environment or economic development are the likely targets of reprisal, like the NAACP plaintiffs in *NAACP v. Button,* 371 U.S. 415 (1963), and *NAACP v. Alabama ex rel Patterson,* 357 U.S. 449 (1958). Of course, residents may be more annoyed by being asked to be a witness in litigation than they were by being solicited by Plaintiff in the first instance, but that can hardly count as a reason against permitting their identity to be discovered. Even the President of the United States is subject to subpoena when his testimony is needed. *United States v. Nixon*, 418 U.S. 683 (1974).

**Conclusion**

It is hereby ORDERED that Plaintiff produce to Defendant for inspection and copying the following documents not later than August 29, 2008:

1. Petitions circulated in the City of Englewood in 2005 with signatures of residents;
2. Names of members of Citizen Action who reside in the City of Englewood;
3. Names of individuals who reside in the City of Englewood who have been identified by Citizen Action as an "X file";
5. Saturday crew sheets;
6. Maps of Englewood showing homes canvassed from and after January 1, 2004;
7. Petition or signature sheets for past canvasses in Englewood from and after January 1, 2004;
8. Lists of residents of Englewood contacted by Citizen Action from 2004 to the present.

To the extent Plaintiffs desire to have the Court enter a protective order[2] to prevent this information from becoming public, Plaintiff's counsel shall tender a proposed protective order to Defendant's counsel not later than August 22, 2008.  If counsel are unable to agree on the form of protective order, they shall submit competing drafts for the Court's consideration in Word or WordPerfect format by email to michael_merz@ohsd.uscourts.gov as soon as they have reached an impasse in negotiating a protective order.  Any protective order must comply with the holding in *Procter & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219 (6th Cir. 1996).

August 19, 2008.

                                                s/ **Michael R. Merz**
                                                Chief United States Magistrate Judge

---

[2] Entry of a protective order will obviate Plaintiff's trade secret objection as well.